IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAUREN THOMAS, <br><br> Plaintiff, <br><br> v. <br><br> SPENST HANSEN, <br><br> Defendant. | **REPORT AND RECOMMENDATION** <br><br> Case No. 2:12–cv–00701–DN–EJF <br><br> District Judge David Nuffer <br><br> Magistrate Judge Evelyn J. Furse |

Defendant Spenst Hansen moved this Court[1] to dismiss this case on July 17, 2012.[2] (ECF No. 4.) With his Motion Mr. Hansen submitted an affidavit with facts supplemental to those in the Complaint. After reviewing the Motion to Dismiss, the Court gave formal notice to the parties on April 23, 2013, that it converted the Motion to Dismiss to a motion for summary judgment and that it would allow both parties the opportunity to modify their briefing or submit new briefing. (ECF No. 11; *see* Fed. R. Civ. P. 12(d).) In response to the notice, the parties submitted additional briefs. (*See* ECF Nos. 12, 13.)

Mr. Hansen requests the Court grant summary judgment in his favor contending no genuine dispute as to any material fact exists, and therefore, the Court should grant summary judgment in his favor as a matter of law and dismiss Ms. Thomas's Complaint. (*See* ECF No. 13 at 2–3.) The Court carefully considered the Motion and Memoranda submitted for and against Mr. Hansen's Motion and held a hearing on June 26, 2013. Because Ms. Thomas's claims fail as a matter of law based on the undisputed material facts, this Court recommends the District Court

---

[1] On November 28, 2012, District Judge David Nuffer referred this case to Magistrate Judge Evelyn J. Furse under 28 U.S.C. section 636(b)(1)(B). (ECF No. 8.)

[2] Because Mr. Hansen proceeds pro se, the Court liberally construes his filings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) (citation omitted).

GRANT the Motion for Summary Judgment and DISMISS Ms. Thomas's Complaint with prejudice.

## FACTUAL BACKGROUND

On July 16, 2011, Ms. Thomas, a resident of Kennewick, Washington, (ECF No. 2 at 1), visited relatives in Utah when friends invited her to visit the Copper Leaf mine shaft (the "Mine") located on Mr. Hansen's private property near Eureka, Utah. (*Id.* at 3.) To access the open pit Mine from westbound U.S. Highway 6, one must turn right near the crest of Eureka Summit onto an unmarked gravel road and pass through a barbed wire gate on which Mr. Hansen posted a no trespassing sign.[3] After passing through the gate, one must turn left on a nearby secondary gravel road to reach the Mine. Before arriving at the Mine, one encounters two four feet tall by twelve feet long earthwork barriers with a four feet below-grade trench between them that crosses the secondary gravel road. A large steel reinforced grate with one-foot square openings covers the Mine's approximately 1,000 feet-deep opening. Concrete approximately one foot wide by one and one-half feet tall secures the grate's edges. (ECF No. 5, Ex. 1 at 2.)

Approximately thirty other young people had gathered at the Mine when Ms. Thomas and her friends arrived. Ms. Thomas sat on the grate covering the Mine and dangled her legs through the openings in the grate. According to Ms. Thomas a boy, who she did not know, dipped a cloth into a two gallon cooler filled with gasoline and attempted to ignite the cloth while maneuvering it to an opening in the grate. The cooler tipped over and spilled burning gasoline on Ms. Thomas causing severe burns on her legs and feet. (ECF No. 12 at 3.)

---

[3] Ms. Thomas states in an affidavit submitted to the Court that she did not see a no trespassing sign and that she did not see or pass through a gate. (*See* ECF No. 12, Ex. 5 at 2.) This Court does not determine whether this fact constitutes a disputed fact because the Court does not find it material to resolution of the Motion.

## STANDARD OF REVIEW

Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). In considering a motion for summary judgment, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Burke v. Utah Transit Auth.*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). "At the summary judgment stage, a complainant cannot rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting *Utah v. Babbitt*, 137 F.3d 1193, 1204–05 (10th Cir. 1998)) (internal quotation marks omitted). The Plaintiff must have more than a scintilla of evidence in support of its position such that a "jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252.

As an initial matter, Ms. Thomas argues summary judgment is premature without further discovery to determine whether or not the attractive nuisance doctrine applies to this case because not enough evidence exists at this stage for the Court to make such a determination. (ECF No. 12 at 6–7.) The Court disagrees.

Under Rule 56(c), Ms. Thomas must respond to Mr. Hansen's Motion by submitting affidavits and other evidence, and the Court gave Ms. Thomas an opportunity to do so. Ms. Thomas cannot defeat the Motion for Summary Judgment by simply resting on "mere allegations, but must set forth by affidavit or other evidence specific facts." *Burke*, 462 F.3d at 1258 (10th Cir. 2006) (quotation omitted). The Court need not wait until after the parties conduct additional discovery because based on the affidavits and other evidence the parties do

not dispute the Court has sufficient information to determine that Mr. Hansen owes no duty as a matter of law to Ms. Thomas. *See Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996) (finding summary judgment proper before the close of discovery when "discovery would not have changed the legal and factual deficiencies"); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2719 (3d ed. 1998) (noting "the purpose of summary judgment is to pierce the allegations in the pleadings and permit consideration of the dispute's merits at an early stage of the proceeding").

## **DISCUSSION**

Ms. Thomas claims Mr. Hansen bears responsibility for her injuries because he "negligently failed to take steps to either make the condition safe or warn [her] and others of the dangerous condition and risk of substantial harm and danger to life and limb." (ECF No. 2 at 4.) Although Ms. Thomas admits she trespassed on the property, she argues Mr. Hansen owed her more than the ordinary duty of care owed by a possessor of land to a trespasser because Mr. Hansen knew or should have known people frequently trespassed on his land who could be seriously injured by an uncommon or hidden peril resulting from an artificial condition on the land. (ECF No. 12 at 4.) Further, Ms. Thomas argues Mr. Hansen owed her a heightened duty of care because she was a minor at the time of her injury, and the Mine poses an attractive nuisance for minors that Mr. Hansen failed to mitigate. (*Id.* at 6.)

Mr. Hansen claims the Court should grant summary judgment in his favor because no disputed material facts exist and because he took the necessary precautions to protect possible trespassers from harm resulting from the Mine. (ECF No. 13 at 2–3.) Further, Mr. Hansen claims there is "no causal link to [Ms. Thomas]'s injuries and a remote Mine shaft she travelled to at night which was covered, marked, and fenced." (ECF No. 7 at 3.) Mr. Hansen also argues

Ms. Thomas criminally trespassed under Utah law and that this Court should sanction Ms. Thomas's counsel for failing "to investigate the facts prior to filing [the] Complaint." (ECF No. 5 at 5–7.) The Court finds Ms. Thomas's claims fail as a matter of law based on the undisputed facts. The Court will address each party's arguments in turn.

### I. Duty of care owed a trespasser under Utah law

"In this diversity case, the substantive law of the forum state, [Utah], governs [the Court's] analysis of the underlying claims." *Kansas Penn Gaming, LLC v. HV Props., LLC*, 662 F.3d 1275, 1284 (10th Cir. 2011) (citing *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007)). Under Utah law the duty a possessor of land owes to a person on the possessor's land depends on whether that person qualifies as an invitee, a licensee, or a trespasser. *Pratt v. Mitchell Hollow Irr. Co.*, 813 P.2d 1169, 1172 (Utah 1991) (citing *Tjas v. Proctor*, 591 P.2d 438, 441 (Utah 1979)). An invitee is a person who the possessor invites onto its property for a particular purpose who accepts that purpose. Restatement (Second) of Torts § 332 (1965) (hereinafter "Restatement"); *see also Stevens v. Salt Lake Cnty.*, 478 P.2d 496, 498 (Utah 1970). A licensee is a person who enters and remains on the possessor's property solely by the consent of the possessor. *Stevens*, 478 P.2d at 498; Restatement § 330. Someone who enters the possessor's property without the privilege to do so, however constitutes a trespasser. *Whipple v. American Fork Irr. Co.*, 910 P.2d 1218, 1220 (Utah 1996); Restatement § 329. The parties agree Ms. Thomas trespassed on Mr. Hansen's property. Thus, by Utah law, Mr. Hansen only owes the duty of care owed a trespasser.

Although expressed differently in its earlier cases, the Utah Supreme Court indicated it adopted the duty of care a possessor of land owes to a trespasser as stated by the Restatement (Second) of Torts section 333. *Id.* Under section 333, a possessor generally has no liability to a

trespasser for failure to exercise reasonable care in either the condition of the land or the activities engaged in on the land.  *Id*.  This standard creates a degree of immunity from liability for the possessor of land, *see* Restatement (Second) of Torts § 333, comment b, except under certain specific conditions, as expressed by Restatement sections 334 through 39.  Ms. Thomas argues Mr. Hansen owed her a "heightened duty of care" under three exceptions to section 333—sections 334, 335, and 339.  The Court addresses each of these exceptions and explains why they do not apply to the facts of this case.

### a. Section 334. Activities Highly Dangerous To Constant Trespassers On Limited Area

To support her contention that Mr. Hansen owed her a duty of care greater than that generally owed a trespasser, Ms. Thomas points to section 334:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

Restatement § 334.  This exception does not apply in this case for several reasons.

Assuming for the sake of summary judgment Mr. Hansen should have known people frequently trespassed on his land, Mr. Hansen could not have "fail[ed] to carry on an activity involving a risk of death or serious bodily harm with reasonable care for [a trespasser's] safety," Restatement § 334, because Mr. Hansen did not conduct the highly dangerous activities occurring on his land.  The other trespassers, not Mr. Hansen, threw and ignited gasoline soaked or filled objects down the Mine.  The actions of the other trespassers, not Mr. Hansen's actions, led to Ms. Thomas's serious injuries.  If anyone has liability for Ms. Thomas's injuries the trespassers do because they created the unreasonable risk of harm to others on the land.  *See*

Restatement § 381.[4] Mr. Hansen therefore did not owe Ms. Thomas a heightened duty of care under section 334 because even if he knew or should have known of the trespassing and associated activities, Ms. Thomas's injuries did not result from highly dangerous activities carried out by Mr. Hansen.

### b. Section 335. Artificial Conditions Highly Dangerous To Constant Trespassers On Limited Area

Ms. Thomas cites section 335 as the second exception to support her argument that Mr. Hansen owed her a greater duty of care. Section 335 provides:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if
> (a) the condition
> (i) is one which the possessor has created or maintains and
> (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and
> (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement § 335. Even if Mr. Hansen should have known people frequently trespassed to get to the Mine, the Mine itself did not cause Ms. Thomas's injuries, the other trespassers did. *See* Restatement § 381. The Mine constitutes the artificial condition on the land, and Ms. Thomas conceded at oral argument that the Mine did not cause her injuries. Rather, the flaming gasoline caused her injuries, and flaming gasoline brought by trespassers does not qualify as an artificial condition on the land. Based on the pleadings and the evidence, Ms. Thomas cannot successfully rely on section 335 to assert her claim against Mr. Hansen.

---

[4] "A trespasser on land is subject to liability to others . . . for physical harm caused to them by any act done, activity carried on, or condition created while upon the land by the trespasser which he should recognize as involving an unreasonable risk of causing such harm to them." Restatement § 381.

### c. Section 339. Artificial Conditions Highly Dangerous To Trespassing Children

The final exception to section 333 under which Ms. Thomas claims Mr. Hansen owed her a heightened duty of care is section 339, known as the attractive nuisance doctrine. For the attractive nuisance doctrine to apply, the trespasser must be a child injured by an artificial condition on the land, and:

> (a) the place where the condition exists is one upon which possessor knows or has reason to know that children are likely to trespass, and
> (b) the condition is one of which possessor knows or has reason to know and which he realizes or should realize will involve unreasonable risk of death or serious bodily harm to such children, and
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement § 339; *see also Kessler v. Mortenson*, 2000 UT 95, ¶15, 16 P.3d 1225, 1228. The Court previously addressed the threshold question, whether the Mine injured Ms. Thomas: the Mine did not injure her; the other trespassers' dangerous activities injured Ms. Thomas.

Because the Mine represents the artificial condition upon the land, this exception does not apply. Ms. Thomas seems to imply that the Mine itself constitutes an attractive nuisance simply because it attracts trespassers, including teenage minors, who go to the Mine to create or watch dangerous activities. While a connection exists between the Mine and Ms. Thomas's injuries, the dangerous activities that caused her injuries are not inherent to the Mine or the condition in which Mr. Hansen maintained the Mine. However, even if the Court found a sufficient nexus between the Mine and the dangerous activities of the trespassers, and therefore that the Mine

caused Ms. Thomas's injuries, this case lacks other conditions necessary for the application of the attractive nuisance doctrine.

Simply because Ms. Thomas was a minor at the time of her injuries does not establish that she qualifies for the attractive nuisance exception. As required by subsection (c) of section 339, a court must consider the child's maturity. Regarding a child's maturity comment j to section 339 states:

> j. There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the conditions is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it.

Restatement § 339, comment j.

Ms. Thomas was an unsupervised teenager old enough to join friends who had the means to drive a significant distance to a remote location at night. Any child old enough to seek out and find a remote mine at night is also old enough to recognize and appreciate the risk that a mine may present, including the risks associated with gasoline and fire, as a matter of law. *See Pratt*, 813 P.2d at 1173 n.5 (Utah 1991) (refusing to apply attractive nuisance exception to three-year-old who fell into an irrigation ditch because "the danger of a ditch is 'expected to be fully understood and appreciated by any child of an age to be allowed at large.'") (quoting *Weber v. Springville City*, 725 P.2d 1360, 1366 n. 19 (Utah 1986)).

Further, the public nuisance doctrine does not require Mr. Hansen to protect possible child trespassers from every conceivable harm. *See* Restatement § 339, comment b (the land holder has a "limited obligation to the child, falling short of a duty to prevent all foreseeable harm . . . ."). Therefore, the Mine does not constitute an attractive nuisance under the undisputed

-9-

facts of this case. Therefore, the District Court should grant Mr. Hansen's Motion for Summary Judgment.

## II. Criminal Trespass

Mr. Hansen argues Ms. Thomas violated section 76–6–206.1(2)(a) of the Utah Criminal Code and therefore constituted a criminal trespasser when she suffered her injuries. *See* Utah Code Ann. § 76–6–206.1 (West 1997). Under section 76–6–206.1(2)(a) a person is guilty of a misdemeanor when she "intentionally enters and remains unlawfully in the underground workings of an abandoned or inactive mine." Under this section, to "enter" an abandoned or inactive mine "means intrusion of the entire body." UCA § 76–6–206.1(1)(b). Because neither party contends Ms. Thomas's entire body entered the "underground workings" of the Mine or that she was charged as a criminal trespasser, the Court need not analyze this contention any further.

## III. Sanctions for Failure to Investigate

Mr. Hansen requests the Court impose sanctions on Ms. Thomas's counsel for failing to investigate the site of the accident before filing the Complaint. Rule 11(b) requires parties to make "an inquiry reasonable under the circumstances" before filing a pleading with a court. Fed. R. Civ. P. 11(b). A party may request a court impose sanctions when a party fails to comply with Rule 11(b). Fed. R. Civ. P. 11(c). However, a party requesting sanctions must file a motion separately from any other motion, and it must describe specific conduct for which the Court should impose a sanction. *Id*. Although Mr. Hansen proceeds pro se and the Court liberally construes his filings, *Casanova* 595 F.3d at 1125, the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation, quotations, and brackets

omitted). Therefore, because Mr. Hansen did not file a separate motion for sanctions that complies with Rule 11, the Court denies his request for sanctions at this time.

Additionally, Rule 11(a) requires a party, if unrepresented, or an attorney of record to sign every pleading. Fed. R. Civ. P. 11(a). When a party submits an unsigned pleading to the court, "[t]he court must strike [the pleading] unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.* Ms. Thomas's counsel did not sign the Complaint. The Court warned Ms. Thomas's counsel at oral arguments on June 26, 2013, that he had failed to sign the Complaint and that the rule required him to do so. The unsigned Complaint provides additional grounds for dismissal because as of the date of this Report and Recommendation, Ms. Thomas's counsel has not corrected that omission.

## **RECOMMENDATION**

For the reasons stated above, the District Court should GRANT the Motion for Summary Judgment for Mr. Hansen.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 1st day of August, 2013.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge